UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE GORDON,

        Plaintiff,                      CIVIL ACTION NO. 08-12989

      v.                                DISTRICT JUDGE ARTHUR J. TARNOW

G. COLLINS and ROBERT           MAGISTRATE JUDGE VIRGINIA M. MORGAN
MULVANEY,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that defendants violated his rights under the United States Constitution. The matter comes before the court on defendants' Motion for Summary Judgment (D/E #11). For the reasons discussed below, this court recommends that defendants' motion be **GRANTED IN PART**. Defendants are entitled to summary judgment with respect to plaintiff's claim that they violated his right to due process, but they are not entitled to summary judgment on plaintiff's retaliation claim. Additionally, plaintiff is limited in the relief he can seek with respect to his claims against defendants in their official capacities.

-1-

## II. Background

### A. Complaint

On July 9, 2008, plaintiff filed the complaint against defendants in this matter (D/E #1). According to that complaint, plaintiff was an inmate at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan during the events described in the complaint. (Complaint, ¶ 2) The complaint also asserts that defendant Collins is employed as the "Acting" Institutional Security Threat Group ("STG") Coordinator at SLF while defendant Mulvaney is employed as the Central Office STG Coordinator for the MDOC as a whole. (Complaint, ¶¶ 3-4) Both defendants are being sued in their personal and official capacities. (Complaint, ¶¶ 3-4) As a general matter, plaintiff claims that defendants retaliated against him and violated his right to due process by improperly designating him as a STG member because he filed administrative grievances against correctional officials. (Complaint, ¶ 1)

Specifically, plaintiff alleges that, on February 22, 2006, plaintiff was designated as an STG Member of an "Non-validated Group" with his rank listed as "unknown". (Complaint, ¶ 6) According to the complaint, Mulvaney made the determination to designate plaintiff after Collins fabricated a STG Member Identification Form, Mulvaney failed to verify the validity of that document when it was presented to him, and Mulvaney failed to hold an impartial hearing. (Complaint, ¶¶ 17-20)

Plaintiff also alleges that he is the only designated member is that non-validated group and that, while the STG designation was purportedly based on self-admission, tattoos and symbols, all of those reasons are invalid and the "designation derived out of retaliation for

Plaintiff not giving satisfactory answers to an unrelated investigation, filing numerous grievances on staff corruption, and refusing to sign STG paperwork." (Complaint, ¶¶ 6-7, 14-15) According to plaintiff's complaint, he filed a grievance over his STG designation on July 16, 2007 and, despite the invalidity of the reasons given for the designation, plaintiff's grievance was denied at all stage of the MDOC grievance process. (Complaint, ¶¶ 8-13)

Plaintiff further alleges that, as a result of the violations of his constitutional rights, his visitation rights and recreational privileges have been restricted and he has lost both his ability to get a job at the jail and the potential benefits from such employment. (Complaint, ¶ 22) As relief, plaintiff requests (1) a Declaratory Judgment stating that defendants violated plaintiff's rights under the United States Constitution; (2) an injunction ordering defendant Mulvaney to immediately expunge plaintiff's STG designation, and all related documents, from plaintiff's file; and (3) punitive damages in the amount of $15,000.00 against defendant Collins and $10,000.00 against defendant Mulvaney.

### B. Motion Before the Court

On December 19, 2008, defendants filed the motion for summary judgment pending before the court (D/E #11). In that motion, defendants argue that they are entitled to qualified immunity because their conduct has not violated any of plaintiff's clearly established constitutional or statutory rights. With respect to plaintiff's retaliation claim, defendants argue that the alleged adverse action was not temporally related to any exercise of protected rights. With respect to plaintiff's due process claim, defendants argue that designation as a member of a STG group does not alter plaintiff's term of imprisonment or place an atypical or significant

hardship on plaintiff. With respect to plaintiff's request for injunctive and declaratory relief, defendants argue that plaintiff has failed to show a continuing violation of a federal constitutional right.

On January 8, 2009, plaintiff filed a response in opposition to defendants' motion for summary judgment (D/E #14). In that response, plaintiff argues that genuine issues of material fact exist as to both plaintiff's retaliation claim and his due process claim. Plaintiff also argues that defendants are not entitled to immunity from injunctive or declaratory relief because this action involves the unconstitutional execution or implementation of a policy statement, ordinance, regulation or decision officially adopted and promulgated by defendants. Plaintiff further argues that defendants are not entitled to qualified immunity because they violated clearly established constitutional rights of which a reasonable person would have known.

On March 10, 2009, defendants filed a reply to plaintiff's response to defendants' motion for summary judgment (D/E #17). In that reply, defendants argue that plaintiff's assertions that genuine issues of material fact exist are false and that plaintiff's arguments based on the Eleventh Amendment to the United States Constitution are without merit. Defendants also argue that they are entitled to qualified immunity.

On March 23, 2009, plaintiff filed a response to defendants' reply (D/E #19). In that response, plaintiff again argues that genuine issues of material fact preclude summary judgment on either of plaintiff's claims. Plaintiff also argued that defendants are not entitled to any type of immunity.

**III. Standard of Review**

Defendants move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

    **A. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity and summary judgment on both plaintiff's retaliation claim and plaintiff's due process claim. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was

clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

**1. Retaliation Claim**

Defendants argue that no genuine issue is in dispute with respect to plaintiff's retaliation claim against them.[1] To demonstrate a claim for retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir. 2002) (internal quotation marks omitted).

---

[1]This court would note that it is unclear from plaintiff's complaint whether his retaliation claim is against both defendants or just Collins. Given that defendants treat the claim as being against both of them and in light of the liberal construction afforded *pro se* pleadings, Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999), this court will treat the retaliation claim as being against both defendants as well.

In this case, defendants do not dispute that a genuine issue exists with respect to the protected conduct and adverse action elements of plaintiff's retaliation claim.  Defendants do, however, argue that they are entitled to summary judgment on plaintiff's retaliation claim because no genuine issue of material fact exists with respect to the causation element of that claim.  Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity.  Thaddeus-X, 175 F.3d at 399.  Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment.  Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001).  There is no causation where the defendant is not the decision-maker.  See Smith, 250 F.3d at 1038 (holding that one of the defendants' comments did not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted that the defendant making the comment was not the decision-maker in the case); Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on plaintiff's retaliation claim because they were not involved in the decision to terminate the plaintiff); Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998) (holding that statements by nondecision-makers cannot suffice to satisfy the plaintiff's burden of demonstrating animus).  Moreover, while retaliation can rarely be supported with direct evidence of intent, the plaintiff

must have more than conclusory allegations of retaliatory motive unsupported by material facts. Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005).

Here, plaintiff provided copies of a twelve grievances he filed against prison staff during the month prior to his designation as an STG member (Grievances; attached as Appendixes C-E, G-O to the Complaint) and an inference that the plaintiff's protected activity was at least a motivating factor for the adverse decision may be supported by circumstantial evidence, such as the timing of events or the disparate treatment of individuals.  See Arnett v. Myers, 281 F.3d 552, 560-61 (6th Cir. 2002) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999)). However, temporal proximity alone is generally insufficient to establish a causal connection for a retaliation claim." Cushman-Lagerstrom v. Citizens Ins. Co. of America, 72 Fed. Appx. 322, 332, 2003 WL 21774017, at *9 (6th Cir. July 30, 2003) (citations omitted).  See also Coulter v. Deloitte Consulting, L.L.C., 79 Fed. Appx. 864, 867, 2003 WL 22514343, at *4 (6th Cir. Nov.4, 2003).

In addition to the timing of events, plaintiff points to problems with the stated reasons for why he was designated an STG member in an effort to demonstrate causation.  The STG Member Identification form completed by Collins identified plaintiff as being affiliated with a "Non-Validated Group (other)" on the basis of (1) "Self-admission", (2) "Tattoos", and (3) "Use/Possession of Symbols or Logos."  The boxes for "Possession of Documents", "Possession of Publications", or "Membership Documents" were not checked and the form indicates that all applicable boxes should be checked.  (Security Threat Group Member Identification; attached as Appendix A to Complaint)

-9-

In his subsequent affidavit, Collins stated that the "Self-admission" box was checked because plaintiff refused to sign a written document stating that plaintiff was not involved in any gang. (Collins' Affidavit, ¶ 3; attached as Exhibit A to Defendants' Motion for Summary Judgment) Collins also stated that plaintiff has "several tattoos similar to those found on gang members" without describing those tattoos. (Collins' Affidavit, ¶ 4; attached as Exhibit A to Defendants' Motion for Summary Judgment) Collins further stated that he had been given information from other unit staff that plaintiff had been seen displaying gang signs. (Collins' Affidavit, ¶ 4; attached as Exhibit A to Defendants' Motion for Summary Judgment)

Plaintiff filed a grievance asserting that the self-admission box had been incorrectly checked on the STG Member Identification form, but his grievance was rejected at all three steps of the MDOC Grievance Process. (Grievance SLF-07-07-0163-21b; attached as part of Appendix B to Complaint) In response to that grievance, Collins wrote a memorandum indicating that, while plaintiff made no written admission of belonging to an STG, the box was checked because plaintiff refused to state in writing that he was not involved in any gang. (Memorandum, July 19, 2007; attached as part of Appendix B to Complaint) At Step I, the respondent stated that there was other contributing evidence, in the form of "[t]attoos, symbols, etc." and that "if the grievant himself was not willing to state he was not affiliated with a STG, and other evidence indicated that he was affiliated, why would anyone else be willing to state that he was affilated." (Memorandum, August 7, 2007; attached as part of Appendix B to Complaint) The grievance was subsequently upheld at Steps II and III for similar reasons.

(Memorandum, October 4, 2007, and Third Step Grievance Response for Grievance SLF-07-07-0163-21b; attached as parts of Appendix B to Complaint)

In his first affidavit, Mulvaney stated that plaintiff was designated an STG member based on the fact that:

> Plaintiff was seen by unit staff members "posting up" in a military fashion in the doorway of his housing unit. Plaintiff was subsequently found guilty of a misconduct related to this behavior. Plaintiff was viewed by staff throwing up known gang signs in the facility walkway. Plaintiff was found to be in possession of inflammatory Black Panther Party material and when he was spoken to about the material, he refused to sign a renunciation form stating that he was not involved with any subversive groups. [First Affidavit of Mulvaney, ¶ 4; attached as Exhibit B to Defendants' Motion for Summary Judgment]

In his second affidavit, Mulvaney stated that multiple factors were considered before plaintiff was given the STG designation, but that the "tattoos were not taken into consideration for the final decision." (Second Affidavit of Mulvaney, ¶ 4; attached as Exhibit E to Defendants' Reply Brief) Mulvaney also stated that:

> the decision was based on behaviors exhibited by [plaintiff] which led the staff to believe he might pose a threat. He was given a minor misconduct for posting up in military fashion .... He refused to cooperate with staff. He was seen using hand signals that the staff believed to be gang signs. [Second Affidavit of Mulvaney, ¶ 4; attached as Exhibit E to Defendants' Reply Brief]

Mulvaney further stated that:

> The material found in [plaintiff's] cell was not in a book; it was four loose-leaf pages of Black Panther History which [plaintiff] refused to explain. [Plaintiff] did not explain why he only had these four pages of Black Panther History. [Plaintiff] refused to cooperate with staff on this matter. His failure to explain these pages and his failure to cooperate with staff in resolving this issue led to a Notice of Intent to Conduct an Administrative Hearing to determine whether he was part of a Security Threat Group. [Second Affidavit of Mulvaney, ¶ 6; attached as Exhibit E to Defendants' Reply Brief]

-11-

Mulvaney also stated in his second affidavit that:

> In the absence of cooperation from prisoners, MDOC staff have a duty to err on the side of caution. [Plaintiff] refused to cooperate with staff. This behavior, along with other factors such as being observed flashing gang signs and his posting up military style in the doorway, couple with the fact that he refused to deny that he was part of a security threat group, led to his ultimate designation as STG I. [Second Affidavit of Mulvaney, ¶ 7; attached as Exhibit E to Defendants' Reply Brief]

Mulvaney attached a Minor Misconduct Violation and Hearing Report indicating that plaintiff was cited for "loitering in the front vestible" (Minor Misconduct Violation and Hearing Report, January 26, 2006; attached as part of Exhibit E-1 to Defendants' Reply Brief) and a Memorandum from the RUO who issued that misconduct in which the RUO wrote that plaintiff and others "posted up military style in the doorway" (Memorandum, January 30, 2006; attached as part of Exhibit E-1 to Defendants' Reply Brief).

Given the above evidence, a genuine issue is in dispute with respect to the causation element of plaintiff's retaliation claim. As discussed above, the timing of events provides circumstantial evidence that the adverse action was taken because of plaintiff's protected conduct. Moreover, the reasons given by defendants for the STG designation are shifting and inconsistent. For example, while Mulvaney asserts that inflammatory literature was found in plaintiff's cell and that plaintiff refused to sign a renunciation form stating that he was not involved with any subversive groups when spoken to about those materials, Collins never mentioned any such material and his affidavit provides that he asked plaintiff to sign a renunciation form because of plaintiff's tattoos and because he had been given information from other staff that plaintiff had been seen flashing gang signs. Moreover, Collins did not indicate on

the STG Member Identification form that plaintiff possessed any questionable material and that form includes boxes for "Possession of Documents", "Possession of Publications", or "Membership Documents" while indicating that all applicable boxes should be checked. Similarly, the responses to the grievance plaintiff filed regarding the STG Member Identification form upheld the use of the renunciation form because of "[t]attoos, symbols, etc" and not because of any literature found in plaintiff's cell.

In addition to relying on purportedly inflammatory literature that was never discussed by Collins or the grievance respondent, Mulvaney also differed from Collins in the other reasons he gave for the designation. With respect to plaintiff's tattoos, while Collins and the grievance responses relied on the undescribed and unidentified tattoos in support of the designation, Mulvaney's second affidavit provides that the tattoos were not taken into consideration. Mulvaney did not state why he did not rely on the tattoos. Mulvaney did discussed why he relied on a loitering misconduct plaintiff received, in which a prison staff member noted that plaintiff had been seen posting up in a military style, but that misconduct was not mentioned anywhere else.

Both defendants discussed reports of plaintiff flashing gang signs as a basis for the designation, but the inconsistency and shifts between the other stated reasons, in addition to the timing of events, demonstrates why a rational trier of fact could find for the plaintiff on the issue

of causation.[2]  Given that a rational trier of fact could find for plaintiff, there is a genuine issue for trial and defendants' motion should be denied as to plaintiff's retaliation claim

**2. Due Process Claim**

Plaintiff also claims that defendants violated his right to due process.  The Due Process Clause of the Fourteenth Amendment states that a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  Claims alleging violations of due process can either allege a violation of procedural due process or substantive due process.  "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest."  Warren v. City of Athens, 411 F.3d 697, 708 (6th Cir. 2005).  "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process."  Grinter v. Knight, 532 F.3d 567, 572 (6th Cir.2008) (citation omitted).

Here, plaintiff does not specifically identify if he is alleging a procedural due process claim, a substantive due process claim, or both.  However, it appears from his complaint and briefs that he is only alleging a procedural due process violation given his focus on the process, or lack of process, that occurred prior to plaintiff being given a STG designation.  To establish a procedural due process violation, plaintiff must demonstrate that 1) he possessed a constitutionally protected property or liberty interest; 2) he was deprived of that interest; and 3)

---

[2]As discussed above, defendants do not challenge whether there is a genuine issue with respect to the other two elements of plaintiff's retaliation claim.

the state did not afford him adequate procedural rights prior to depriving him of that interest. See, *e.g.*, Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, 470 F.3d 286, 296 (6th Cir. 2006); Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006).

In this case, plaintiff cannot demonstrate that he possessed a constitutionally protected property or liberty interest. Plaintiff concedes that he did not have a protected property interest and, while he alleges the existence of a protected liberty interest, the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. See Olim v. Wakinekona, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Meachum v. Fano, 427 U.S. 215, 244, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Moreover, the Sixth Circuit has followed those Supreme Court's rulings in a variety of security classification challenges and has specifically held that a prisoner is not entitled to due process before being designated an STG member. See Harbin Bey v. Rutter, 420 F.3d 571, 577 (6th Cir. 2005) (finding that an increase in security classification, such as being classified as an STG member, does not constitute an atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification). See also Ford v. Harvey, 106 Fed. Appx. 397, 399 (6th Cir. 2004) (holding that the plaintiff failed to state a claim for a violation of due process on the basis of his designation as a "Security Threat Group Member" because the designation is nothing more than a security classification used by the prison and the plaintiff did not have a constitutional right to a particular security level or

classification); Ford v. Martin, 49 Fed. Appx. 584, 586 (6th Cir. 2002) (rejecting claim that defendants violated plaintiff's rights to due process and equal protection when they designated him a security threat group member without a hearing; "To the extent that Ford has argued that the defendants improperly changed his security classification, such reclassification does not constitute an atypical and significant hardship on him because a prisoner has no right to a particular security level.").

In light of the above case law, plaintiff cannot demonstrate a protected interest and defendants are entitled to summary judgment on claim alleging a violation of due process. Plaintiff continues to assert that defendants acted improperly, but, without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because "process is not an end in itself." Olim, 461 U.S. at 250.

### B. Injunctive Relief

Defendants also argue that plaintiff cannot seek injunctive relief against them because of their immunity under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

"'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v.

Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief"." Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

Thus, the Eleventh Amendment is a bar to claims for past damages against state defendants sued in their official capacities, but it does not bar prospective relief (injunctive or declaratory) against those defendants. Rossborough Mfg. Co. v. Trimble, 301 F.3d 482, 489 (6th Cir. 2002); Wolfel v. Morris, 972 F.2d 712, 719 (6th Cir.1992); see Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Nor does the Eleventh Amendment bar suits for damages against state officials sued in their individual capacities. Hafer v. Melo, 502 U.S. 21, 30-31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Moreover, qualified immunity protects officials from liability only in their individual capacities and only from damages-not from declaratory or injunctive relief. Flagner v. Wilkinson, 241 F.3d 475, 483 (6th Cir. 2001); Littlejohn v. Rose, 768 F.2d 765, 772 (6th Cir. 1985).

Applying the above rules to the present case, the only claims plaintiffs can bring are claims for declaratory or injunctive relief against defendants in their official or individual

capacities, and claims for damages against defendants in their individual capacities. See, *e.g.*, George-Khouri Family Ltd. Partnership v. Ohio Dept. of Liquor Control, No. 04-3782, 2005 WL 1285677, *3 (6th Cir. 2005) (allowing claims for declaratory or injunctive relief against all of the defendants in both capacities, but limiting the additional claims for damages to the defendants also sued in their individual capacities).

Defendants also appear to argue that all of plaintiff's claims for injunctive relief should be denied in light of the United States Supreme Court's decision in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). In Coeur d'Alene, the Supreme Court held that the Coeur d'Alene Indian Tribe's ("Tribe") suit against the State of Idaho, various state agencies, and numerous state officials in their official capacities, was barred by the Eleventh Amendment because it amounted to the "functional equivalent of a quiet title action which implicates special sovereignty interests." Id. 521 U.S. at 281. The Tribe, a federally recognized sovereign nation, claimed ownership of the submerged lands and bed of Lake Coeur d'Alene, along with the navigable rivers and streams forming part of its water system, and "sought a declaratory judgment to establish its entitlement to the exclusive use and occupancy and the right to quiet enjoyment of the submerged lands as well as a declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands." Id. 521 U.S. at 265. The tribe also sought "a preliminary and permanent injunction prohibiting defendants from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands along with an

award for costs and attorney's fees and such other relief as the court deemed appropriate." Id. The Court was troubled because the declaratory and injunctive relief sought by the Tribe was "far-reaching and invasive," and characterized the Tribe's claims as the "functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe" should the Tribe prevail. Id. 521 U.S. at 282. The Court held that "under these particular and special circumstances" the Ex Parte Young exception to Eleventh Amendment sovereign immunity, which generally permits suits in federal court against state officials sued in their official capacities seeking prospective equitable relief for continuing violations of federal law, did not apply. Id. 521 U.S. at 287.

Here, this case is easily distinguishable from Coeur d'Alene because plaintiff's claims do not rise to the level of a functional equivalent of a quiet title action implicating special sovereignty interests. Defendants merely argue that a government interest is at stake, but that is almost always the case in § 1983 cases and there is nothing to suggest that plaintiff should be barred from seeking all types of injunctive relief.

## V. Conclusion

For the reasons discussed above, this court recommends that defendants' motion be **GRANTED IN PART**. Defendants are entitled to summary judgment with respect to plaintiff's claim that they violated his right to due process, but they are not entitled to summary judgment with respect to plaintiff's retaliation claim. Additionally, plaintiff is limited in the relief he can seek with respect to his claims against defendants in their official capacities.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                     S/Virginia M. Morgan
                     Virginia M. Morgan
                     United States Magistrate Judge

Dated: July 15, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on July 15, 2009.

                     s/Jane Johnson
                     Case Manager to
                     Magistrate Judge Virginia M. Morgan